## LIMITATION OF ACTIONS—TAXATION—JUDICIAL SALES.

[Lucas (6th) Circuit Court, October 17, 1904.]

Parker, Hull and Haynes, JJ.

JAMES M. WOLCOTT V. ELIZABETH HOLLAND ET AL.

1. STATUTE OF LIMITATIONS RUNS AGAINST PURCHASER AT DELINQUENT SALE FROM TIME HE IS ENTITLED TO DEED.

   The statute of limitations (Lan. R. L. 8492; R. S. 4977) begins to run against the purchaser at delinquent tax sale from the day he was entitled to present his certificate to the county auditor and receive a deed, to wit, two years after the date of sale; and after twenty-one years from the time the statute begins to run, without having demanded and received such deed, an action of ejectment by the purchaser against the delinquent tax owner is barred, although the legal title to land sold at delinquent tax sale does not vest in the purchaser until the auditor's deed is in fact executed.

2. AUDITOR'S DEED TO PURCHASER AT DELINQUENT TAX SALE NOT PRIMA FACIE EVIDENCE OF VALID TITLE.

   The auditor's deed to a purchaser at delinquent tax sale is not *prima facie* evidence of a good and valid title, as provided in Lan. R. L. 4337 (R.

Lucas County.

.S. 2877), unless it appear that the preliminary proceedings on the part of the county auditor and treasurer were regular and in conformity with the statutes governing such sales.

ERROR to Lucas common pleas court.

G. P. Thompson and F. A. Baldwin, for plaintiff in error.

King & Tracy and H. W. Lloyd, for defendants in error.

HULL, J.

This is an action in ejectment, and a jury having been waived it was tried to the court of common pleas without a jury, and a finding made in favor of the defendants, upon which a judgment was entered and the petition dismissed. It is to reverse that judgment that a petition in error was filed in this court.

The defense made was that the action was barred by the statute of limitations, that the plaintiff's cause of action had accrued more than twenty-one years prior to the commencement of the action, and therefore, was barred under Lan. R. L. 8492 (R. S. 4977).

The plaintiff claims title under a tax deed of land sold at delinquent tax sale, under Lan. R. L. 4337 (R. S. 2877). The case was tried on an agreed statement of facts; no other evidence was offered by either party. It appears from that that the land was sold for delinquent taxes at the courthouse in Toledo, on January 19, 1860, to V. H. Ketcham, and the tax certificate showing his purchase was issued to him as provided by law; that Ketcham assigned the certificate for a valuable consideration and delivered it to J. T. Newton, and that Newton assigned and delivered it to plaintiff. It appears further from the agreed statement of facts that on December 14, 1882, the plaintiff presented his tax certificate to the auditor of Lucas county, who, at the request of the plaintiff, executed and delivered to him a tax deed for the property; that that was filed with the recorder the next day and was duly recorded; that neither Ketcham, nor Newton, nor the plaintiff, nor any of them has ever occupied or been in possession of the property, or paid any taxes or assessments thereon, except the amount paid by Ketcham to treasurer of Lucas county for said tax certificate. That prior to January 9, 1860, which was the date of the sale, one W. W. Wolcott owned the property in fee simple and was in possession and occupation of it; and that he continued in the possession, occupation and control of it until June 18, 1868, when he sold the property by warranty deed to George Holland.

This deed was duly recorded and said George Holland occupied and was in possession and control of the property and paid all the taxes and assessments upon it from the date of his purchase until his death in the

Wolcott v. Holland.

year 1902, and from that time the defendants, who are his heirs at law, have been in possession and control of and have occupied the premises and paid all taxes and assessments upon them down to the time of the commencement of this suit.  This action was commenced by the service of summons on June 5, 1903, which was a few months less than twenty-one years from the time the tax deed was executed and delivered by the auditor to the plaintiff.

Under Lan. R. L. 4336 (R. S. 2876), the plaintiff or his predecessor was entitled to a deed two years after the date of the purchase on January 9, 1862, so that this suit was commenced a few months more than forty-one years after the time the parties were entitled to have a deed executed by the auditor, upon the presentation of the tax certificate.  So that it appears from this statement of facts that twenty-one years had not elapsed by a few months from the time that the deed was executed to the plaintiff and before the commencement of this suit.

It is claimed by the plaintiff that his cause of action did not accrue until the deed was executed to him by the auditor; and that therefore his claim had not been barred at the time of the commencement of this action.

It is claimed by the defendants, through their counsel, that the statute of limitations began to run against the plaintiff at the time he or his predecessor might have had the deed executed by the auditor to wit, two years after the sale, which would be January 9, 1862; and that the statute of limitations began to run upon that day, or the next day, although no deed was in fact executed until twenty years later; and therefore it is claimed that at the time this action was commenced in June, 1903, the statute of limitations had been running over forty years, and that as a consequence of that, the plaintiff's claim was barred.

' The plaintiff in error cites the case of *State* v. *Godfrey*, 62 Ohio St. 18 [56 N. E. Rep. 482], to sustain his claim that the cause of action did not accrue until the deed was executed.  The first paragraph of the syllabus is:

'"A sale of land at a delinquent tax sale does not vest in the holder of a certificate of purchase at such sale, the title to the property so sold; but the holder of such certificate acquires a right to be invested with the title to such land at the expiration of two years from the sale, if not redeemed."

And it is clear, as stated in this decision of the Supreme Court that the legal title to the property does not vest in the purchaser until the deed is in fact executed.

But the plaintiff could not, by his own act, put off the running of the statute of limitations for this long length of time, or indefinitely, by neglecting to go to the county auditor and request that a deed be executed to him, which he had the right to do two years after the date of the sale, and authorities are cited by the defendants in error which sustain that proposition, especially some Iowa cases. The case of *LaRue* v. *King*, 74 Iowa 288 [37 N. W. Rep. 374], is one of them, and in the second paragraph of the syllabus this is found:

"The statute of limitations begins to run against a purchaser at a tax sale at the time he might obtain a deed; *i. e.*, three years after the date of sale; and after five years from the time it begins to run, not only is the tax title extinguished, but all rights which are depending upon it."

The case of *Hintrager* v. *Hennessy*, 46 Iowa 600 is in point:

"An action by the purchaser at tax sale to recover possession of the property sold for delinquent taxes is barred after the expiration of five years from the time he is entitled to a deed."

The court say on page 602 of the opinion:

"We have no hesitation in holding that as to the purchaser the sale becomes complete whenever his right to a deed becomes perfect, and that the statute as to him began to run at that time, if not before. In other words, he cannot by his own act or laches, prevent the running of the statute. It would be unjust or unreasonable to hold otherwise, for if the purchaser may delay taking a deed for five years why not for ten, or such other period of time when he feels satisfied the owner could not, owing to the lapse of time, death of witnesses, or destruction of records prove the sale fraudulent or void."

The contention of the defendant in error is correct; the statute of limitations did begin to run against the purchaser of this property at tax sale on the day that he was entitled to present his certificate and have executed to him a deed, to wit, on January 9, 1862. He could not by his own act or failure or neglect to present his certificate postpone for twenty years the running of the statute. If he might postpone it for twenty years, he could for thirty years or for forty. On the day that he became entitled to have the deed executed to him, when he was by law entitled to have the legal title vested in him, so far as it affects the statute of limitations, it must be held that he then became the owner of the property and that his cause of action then accrued. We think that this is sustained by the authorities generally. The case of *Palmer* v. *Palmer*, 36 Mich. 487 [24 Am. Rep. 605] is in point. The court say in the last paragraph of the syllabus:

Wolcott v. Holland.

"Whatever may have been the prejudice formerly against statutes of limitations, they are now regarded as just and entitled to be fairly construed; and the cause of action should be held to accrue for the purpose of setting the statute in motion, at least where no delay is contemplated, as soon as the creditor by his own act and in spite of the debtor can make the demand payable."

On page 494 of the opinion, the court says:

"We cannot but think this to be sound doctrine; whatever may have been the ancient prejudice against statutes of limitation they are now regarded as just and entitled to be fairly construed. If a creditor has the means at all times of making his cause of action perfect, it would be unjust and oppressive to hold that he could postpone indefinitely the time for enforcing his claim by failing to present it. He is really and in fact, able at any time to bring an action, when he can by his own act fix the time of payment. It is no stretch of language to hold that a cause of action accrues for the purpose of setting the statute in motion as soon as the creditor by his own act, and in spite of the debtor, can make the demand payable. It may be otherwise, possibly, where delay is contemplated by the express terms of the contract, and where a speedy demand would manifestly violate its intent. But where no delay is contemplated the rule is just and reasonable; and the presentment should be reasonably prompt, or the creditor should be subjected to the operation of the statute."

In the case at bar, the plaintiff or his predecessor, at any time after January 9, 1862, could have demanded of the auditor the deed to which he was entitled, and have invested himself with the legal title to this property. Parties saw fit not to ask for this deed for some reason, for more than eighteen years after they were entitled to it, and we think the case comes within the rule of law laid down in this Michigan case, that at the time when a party could by his own act have perfected his title, it must be held that then the statute of limitations commenced to run. The record does not show what the fact is, but it might be, for aught that appears here, that these defendants or their predecessors have put valuable improvements upon this property; they have occupied it,—the defendants and their predecessors—for over forty years, the plaintiff and his predecessors standing by during all that time, bringing no action to oust them from possession. I say, they may have put valuable buildings, or other valuable improvements upon the land, and it would seem a hard rule that after this long lapse of time, the plaintiff waiting these many years before procuring his deed that he might eject the defendants from their possession at the end of forty years.

Lucas County.

In 19 Am. & Eng. Enc. Law (2 ed.) 193 and 194, this is stated as the general rule:

"Where, however, it is the right or duty of the claimant to comply with certain conditions in order to render his right of action absolute, or where the performance of the condition is within his power, such performance must be accomplished within a reasonable time, and the statute will begin to run, not from the time of actual performance, but from the time when it was reasonably practicable."

A large number of authorities are cited to sustain the proposition that the statute will begin to run, not from the time of the actual performance of this condition, but from the time when it was reasonably practicable; and the time in this case was, of course, when parties might have demanded this deed. There is nothing to excuse the delay. If the record disclosed anything that prevented delivery, a different question might arise; but nothing of that kind appears; and in the absence of anything of that kind, the statute of limitations, in our judgment, would begin to run, on the day that the right accrued to demand the deed. It seems to us that this is the only fair and just rule. Statutes of limitations were anciently held in disfavor somewhat by the courts; but this is no longer true and are now regarded rather as statutes of repose; and where a case comes fairly within the limitation laid down by the statute, it should be enforced by the courts. Such statutes are for the purpose of cutting off stale claims and preventing parties from standing by for forty or fifty years and then undertaking to assert their claims, after it has become impossible on account of the death of witnesses or for other cause to make a defense.

In our judgment therefore, this claim was barred by the statute of limitations at the time of the commencement of this action.

We are of the opinion further that the plaintiff was not entitled to recover in this case for another reason. The finding of facts shows the date of the sale and the day that the certificate was presented to the auditor and the deed delivered, but there is no finding and no evidence as to the preliminary steps required by the statute before the sale for delinquent taxes could be legally made. The introduction of the tax deed itself under Lan. R. L. 4337 (R. S. 2877) does not make a *prima facie* case, and is not sufficient to establish a good title in the plaintiff. The statute is as follows:

"The deed so made by the auditor shall vest in the grantee, his, or their heirs and assigns a good and valid title both in law and in equity, and shall be received in all courts as *prima facie* evidence of a good and valid title in said grantee, his heirs and assigns."

Wolcott v. Holland.

In our judgment a deed executed under this statute does not make a *prima facie* showing of a good and valid title, unless it is also shown that the proceedings prior to that time on the part of the auditor and treasurer have been regular and in conformity with the statutes governing tax sales; and that therefore, there being no showing made in this case as to the regularity of the proceedings no title was proven, not even a *prima facie* showing of title in the plaintiff was made in the case. In the case of forfeited lands for nonpayment of taxes where they have been sold at treasurer's sale the language of the statute is different, and there the deed itself makes a *prima facie* case. The statute Lan. R. L. 4337 (R. S. 2877) says: "The deed so made by the auditor shall vest in the grantee," etc., and it has been held by the Supreme Court that the phrase, "so made," is to be interpreted as made according to the provisions of the preceding section, governing the sale of land for taxes and providing in what cases the auditor shall have the power and authority to make a deed, and what steps must be taken before he has the authority to make a deed to a purchaser at tax sale, etc.

In the case of *Jones* v. *Devore,* 8 Ohio St. 430 the Supreme Court in the syllabus say:

"A valid sale and conveyance of lands by the county auditor for the nonpayment of taxes, bars all pre-existing rights of dower, inchoate or perfect.

"Section 39 of the act of March 23, 1840 (38 O. L. 77), 'prescribing the duties of county auditors' does not make the deed of the county auditor *prima facie* evidence of a valid title, unless it be shown to have been made in pursuance of authority given by law. *Lessee of Carlisle* v. *Longworth,* 5 Ohio 369, followed."

The court say on page 432 (in this case the tax sale was set up in the answer):

"No state of facts is averred in the pleading which would authorize the county auditor to sell and convey the premises. It is not alleged that a tax was legally assessed upon the premises, that a delinquency occurred in the payment of taxes, or that notice of the sale was given by advertisement."

And that is true of the case at bar; no allegations of that kind appear in the petition and no statement of that kind appears in the statement of facts. The court proceeds:

"In short, neither the authority of the officer, nor the acts done under it, are shown; and courts will not raise a presumption in behalf of an officer intrusted with the power to sell and for the nonpayment of taxes, to cover any radical defect in his proceedings."

Lucas County.

Farther along in the opinion on this subject the court cited with approval the case of *Carlisle* v. *Longworth,* 5 Ohio 368, 369, and say:

"Where it was held, that a deed from the county auditor, for lands sold for taxes, cannot be received in evidence without transcripts of the various records of the proceedings upon which the sale was founded.

"The act of 1825, to which, in this case, the court gave a construction, after specifying the preliminary proceedings which should authorize the making of a deed, proceeded, in Sec. 9, to declare the effect of the deed so made, in the following terms. 'The deed made by the county auditor *as hereinbefore specified,* shall be received in all the courts as *prima facie* evidence of a good and valid title in the purchaser,' etc. In regard to the effect of this section, the court said: 'The legislature does not say that *a* deed made by the county auditor shall be received as *prima facie* evidence of a good and valid title, but, '*the* deed,' 'as hereinbefore specified.' In other words *the* deed made by the auditor in pursuance of this act. This is the manifest intention.''

On page 434 in discussing this act, the act as it was when this decision was rendered and as it is now, the court say:

"But, it is probable from an auditor's deed which we find among the papers of the case (and which bears date May 12, 1851, and purports to be founded on a sale made on account of the taxes of 1841 and 1842), that the defendant's title was acquired under the act of 1840.''

Our act as it is now:

"So far as the effect of the auditor's deed is concerned, the terms of this act are quite similar to those of the act of 1825. The act of 1840, 'prescribing the duties of county auditors,' (Swan, new ed., 62), after specifying the preliminary acts to be done, and how, when, and under what circumstances the deed shall be made by the auditor, thus declares the deed.''

The court then quotes the statute and continues:

"Here it is apparent that the deed which is to be 'received in all cases as *prima facie* evidence of a good and valid title' is one which shall vest in the grantee, his or her heirs or assigns, a good and valid title, both in law and equity. It could not have been intended to give such effect to a deed made by a county auditor without authority. The language is, 'the deed so made by the auditor, shall vest,' etc. The adverb 'so' in this connection, can only mean 'as hereinbefore specified' which was the exact language of the act of 1825. The construction which was given to this latter act in 1832, was known to the legislature of 1840, and it is to be presumed that that body, in using terms of precisely the same import, intended them to receive a similar construction. We hold, there-

Wolcott v. Holland.

fore, that by the act of 1840, the deed of the county auditor neither vests a good and valid title in the grantee, nor is it *prima facie* evidence of such valid title, unless it be shown to have been made in pursuance of authority given by law. And as the answer in this case does not state facts sufficient to show such authority, the plaintiff's demurrer must be sustained."

In 35 Ohio State Reports are three cases bearing upon the question. In *Rhodes* v. *Gunn*, 35 Ohio. St. 387 the court say in the syllabus, fourth paragraph:

"A tax deed executed under the act of March 23, 1840 (1 Curwen 630), is not, without other evidence than the deed itself, *prima facie* evidence of the validity of the tax sale; nor will the destruction of the records in the office of the county auditor relating to such sale warrant the presumption of its validity."

On page 395 of the opinion, the court cite with approval *Jones* v. *Devore*, 8 Ohio St. 430 and say:

"That a tax deed executed under the act. in question is not, of itself, *prima facie* evidence of the validity of the sale, was decided in *Jones* v. *Devore*, 8 Ohio St. 430."

Speaking of the case then under consideration, the court says a little farther along on the same page:

"No evidence was given to show a compliance with these provisions of the statute. The destruction of the records in the office of the county auditor did not destroy the evidence to be found in the office of the auditor of state, and in the newspaper in which the delinquent list and notice were published, if such publication was made. Nor was it shown that such evidence was not attainable."

This was a holding in short that it was necessary, notwithstanding the deed to show that the preliminary steps had been regular and according to law. We do not think that Lan. R. L. 4340 (R. S. 2880), which was referred to by counsel in their brief applies to this question. That provides in case the title is defective the purchaser shall not lose what he has paid out at the tax sale, but shall have his purchase money back, with interest and penalty. But in this case there is no evidence as to the amount of the purchase price and in fact, no relief is asked along that line, no equitable relief is asked and by the judgment of the court below the title of the defendants was quieted as against the plaintiff, as we observe from the decree.

We think that under these authorities it is clear that a deed executed under Lan. R. L. 4337 (R. S. 2877) does not make a *prima facie* case of title, as the Supreme Court say, it is only the deed "so made," to wit, the

Lucas County.

deed made according to the provisions of the preceding section. A showing must be made that the taxes assessed were properly assessed and properly advertised for sale; that they were sold according to law that all of the other steps were taken necessary to make a valid sale. No showing of that kind whatever was made in this case, but simply the fact that the deed was delivered to the plaintiff. The record does not show title to the property in the plaintiff. And for this reason, as well as that the action is barred by the statute of limitations, the judgment of the court of common pleas against the plaintiff and in favor of the defendants was correct, and will be affirmed.

**Parker** and **Haynes, JJ.,** concur.